make a necessary element of the crime of extortion or of the crime of blackmail.

It has been suggested that the Legislature could not necessarily intend, while increasing, as it recently has, the punishment for extortion from 5 to 15 years, to leave the attempted crime of extortion a misdemeanor, to be punished only by the penalty prescribed for that class of offenses. One answer to this suggestion is that some forms of the crime of extortion itself constitute only a misdemeanor. Another answer is the intention of the Legislature as determined by the words of the statute.

The title to a law or the heading to a section is a legitimate subject for consideration in the construction of statutes which are somewhat ambiguous. The title or the heading is no part of the statute, but it ofttimes throws light upon the meaning of the words intended in the statute itself. We find that section 857 is entitled "Attempts to extort money or property by verbal threats." This is another indication that the threats described in that section refer to the threat which may constitute a part of the crime of extortion. It must be held that a threat that will produce the fear that constitutes an essential element of the crime of extortion, if verbal, is simply a misdemeanor. The result is not a satisfactory one, for it opens possibilities in the administration of justice that do not conduce to the proper punishment of crime; but that is a question that must be considered by the Legislature alone.

The indictment is proper in form, and alleges sufficient to sustain proof of the crime charged against the defendant. It does not appear, however, by the pleading, whether the threats made by the defendant were written or verbal. It is conceded, however, both by the attorney for the relator and the district attorney, that the only evidence which can be offered will be of verbal threats. This being so, the result of a trial would necessarily be, if the foregoing construction of the statute is proper, the discharge of the defendant.

It follows that the writ should be allowed and the defendant discharged from custody, and an order to that effect may be entered.

Ordered accordingly.

---

### In re BEER.

(Surrogate's Court, New York County. December 2, 1909.)

1. EXECUTORS AND ADMINISTRATORS (§ 118*)—SURCHARGES ON ACCOUNTING.

An administratrix, who delivered money belonging to the estate to her attorney for deposit in her name, left with him the entire management and care of the estate and paid no attention to the deposit which he made. He deposited, however, only a part of the money, and took the balance. He also raised and cashed her checks on the deposit which he afterwards

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

obtained. *Held*, she should be surcharged with the amount he failed to deposit, and also with the raised amount of such checks.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 472–482; Dec. Dig. § 118.*]

**2. Banks and Banking (§ 148*)—Payment of Forged Paper—Liability to Depositor.**

A depositor has a cause of action against a bank for the amount a check paid by it is raised by the payee above the original amount.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 439; Dec. Dig. § 148.*]

Judicial settlement of the account of Sophia Beer, administratrix of Sophia Orthaus. On exceptions to the referee's report. Exceptions overruled, and report confirmed; costs to be taxed and decree settled on notice.

The following is the report of Referee Levy:

To the Surrogate's Court:

I, Marcel Levy, the referee, appointed under an order of the Surrogate's Court of New York County, dated May 7, 1909, to whom the above-entitled matter was referred, to examine the accounts of Sophia Beer, as administratrix herein, and to hear and determine all questions arising upon the settlement of said accounts which the surrogate has power to determine, and to make a report of my proceedings and determinations to this court, with all convenient speed, do hereby respectfully report:

That before proceeding to hear the testimony, I was sworn as prescribed by section 1016 of the Code of Civil Procedure. That the objectors, the German Society of the City of New York, as attorney in fact for Joseph Orthaus et al., by Edward M. Burghard, Esq., and Louis V. Ebert, Esq., its counsel, and the administratrix, Sophia Beer, by Samuel Widder, Esq., her counsel, and the Title Guarantee & Surety Company, surety on the bond of the accounting administratrix, by Adrian T. Kiernan, Esq., its counsel, have ·attended before me, and I have heard and considered the proofs submitted by them respectively, and upon such proofs I do find as follows:

### Findings of Fact.

(1) That during the course of the hearing before me, the objector, the German Society of the City of New York, withdrew objections numbered 1, 3, 4, 5, 7, and 8, leaving for determination by me objections numbered 2, 6, and 9, which are to the effect that the administratrix should be surcharged in this proceeding with at least the sum of $4,672.34.

(2) That the decedent, at the time of her death, had on deposit in the Greenwich Savings Bank of the City of New York the sum of $2,372.34, and in the German Savings Bank of the City of New York the sum of $4,095.88. That on or about the 18th day of October 1906, Sophia Beer, the administratrix, and her attorney, William E. Deane, went to said Savings Banks and withdrew in cash from said banks the amounts on deposit therein to the credit of Sophia Orthaus, to wit, the sum of $2,372.34 and $4,095.88. That the said Sophia Beer, upon receiving such payments, delivered said moneys to the said William E. Deane. That thereafter, and on the same day, said Sophia Beer, with said William E. Deane, went to the Lincoln Trust Company, at 413 Broadway, city of New York, and then and there said Deane opened an account in the sum of $4,095.88, in the name of Sophia Beer, administratrix of the estate of Sophia Orthaus, deceased; she believing that all the moneys drawn by her from said savings banks had been deposited. That the said Sophia Beer did not ask for nor obtain from the said Lincoln Trust Company any bank book or pass book, nor did she know whether or not any bank book or pass book had been issued or delivered to her attorney, William E. Deane.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

That the sum of $2,372.34, the balance of the moneys drawn by the said Sophia Beer from the savings banks as aforesaid, was not deposited in the Lincoln Trust Company, either by her or by her attorney, William E. Deane; the same being appropriated by her said attorney, William E. Deane, to his own use. That on said 18th day of October, 1906, said attorney, Deane, delivered to said Sophia Beer his personal receipt for the sum of $6,468.22. That the said Sophia Beer made no inquiries whatsoever with reference to the moneys on deposit in the Lincoln Trust Company, at any time between said 18th day of October, 1906, and the 11th day of March, 1909. That said Sophia Beer learned for the first time in March, 1909, that her former attorney, Deane, had not deposited said balance of $2,372.34 as aforesaid. That said Sophia Beer left the entire management and care of the estate to her said attorney, Deane, feeling perfectly satisfied that she was safe in the possession of his receipt for the sum of $6,468.22. That the said Sophia Beer failed and neglected to have her pass book properly and regularly balanced at any time whatsoever between the 18th day of October, 1906, and the 11th day of March, 1909.

(3) That on the 13th day of December, 1906, said Sophia Beer signed a check in the sum of $100 and delivered same to her attorney, William E. Deane, who thereafter raised the amount of said check to $2,100, which said check, as raised, was thereafter paid by said Lincoln Trust Company and charged against the account of said administratrix. That the said Sophia Beer was not a party to the raising of such check, this having been done entirely without her knowledge or consent. She never authorized the Lincoln Trust Company to pay over other than the original amount for which said check was drawn, namely, the sum of $100, and had no knowledge of such payment until some time in the month of March, 1909.

(4) That on the 25th day of April, 1908, said Sophia Beer signed a check in the sum of $50, and delivered same to her attorney, William E. Deane, who thereafter raised the amount of said check to $350, which said check, as raised, was thereafter paid by said Lincoln Trust Company and charged against the account of said administratrix. That the said Sophia Beer was not a party to the raising of such check, this having been done entirely without her knowledge or consent. She never authorized the Lincoln Trust Company to pay more than the original amount for which said check was drawn, namely, the sum of $50, and had no knowledge of such payment until some time in the month of March, 1909.

(5) That during the hearing before me the accounting administratrix withdrew the following items from schedule C of the original account, to wit: October 26, 1908, to William E. Deane, for professional services, $50; October 18, 1906, to William E. Deane, for professional services, $100.

### Conclusions of Law.

(1) I conclude that the accounting administratrix herein is liable for the sum of $2,372.34, appropriated by her attorney, Deane, to his own use, and that she should be surcharged with said sum of money, together with interest thereon, at the rate of 2½ per cent. per annum, from the 18th day of October, 1906, to the date of its repayment.

(2) I conclude that the accounting administratrix herein is not liable for the raised amount of the check signed by her on the 13th day of December, 1906, and wrongfully paid by the Lincoln Trust Company; but that she has a cause of action against the Lincoln Trust Company to recover the amount paid by it on said check above its original amount, to wit, the sum of $2,000, and that she therefore be surcharged with said cause of action.

(3) I conclude that the accounting administratrix herein is liable for the raised amount of the check signed by her on the 25th day of April, 1908, and that she be surcharged with the amount thereof, to wit, the sum of $300, with interest thereon, at the rate of 2½ per cent. per annum, from the 25th day of April, 1908, to the date of her repayment of the said sum to said estate.

(4) I conclude that the account of said administratrix should be stated and settled as follows: The administratrix should be charged:

| Amount withdrawn from Greenwich Savings Bank October 18, 1906 | $4,095 88 |
|---|---|
| Amount withdrawn from German Savings Bank October 18, 1906 | 2,372 34 |
| Interest on deposit as per supplemental account | 102 45 |
| Interest on $2,372.34 at 2½ per cent. from October 18, 1906, to July 21, 1909 | 163 67 |
| Interest on $350 at 2½ per cent. from April 25, 1908, to July 21, 1909 | 10 83 |
| Interest on $100 at 2½ per cent. from December 13, 1906, to July 21, 1909 | 6 55 |
| Furniture, jewelry, and proceeds of sale, as per schedule A of supplemental account | 66 00 |
| Total | $6,817 72 |

The administratrix should also be charged with her cause of action against the Lincoln Trust Company for the sum of $2,000, with interest thereon from the 13th day of December, 1906, to the date of its repayment, wrongfully paid out by said trust company on the check, dated December 13, 1906, and raised from $100 to $2,100. The administratrix should be credited:

| Amount of schedule C of original account, $744.80, less items of $100 and $50, withdrawn by the administratrix on the hearing before the referee, and less item of $374.80, for funeral expenses, covered in schedule C of supplemental account | $ 220 00 |
|---|---|
| Amount of schedule C of supplemental account | 399 80 |
| Amount of schedule D of supplemental account | 20 00 |
| Amount wrongfully paid by Lincoln Trust Company on check dated December 13, 1906 | 2,000 00 |
| Total | $2,639 80 |
| Leaving a balance of | $4,177 92 |

—together with said cause of action against the Lincoln Trust Company, which said balance is chargeable with the costs and expenses of this accounting.

The testimony taken before me, together with the exhibits offered in evidence, are hereto annexed and made part of my report.

Samuel Widder, for administrator.

Adrian T. Kiernan, for Title Guarantee & Trust Co.

Edward M. Burghard, for objector Joseph Orthaus.

THOMAS, S. Exceptions overruled, and referee's report confirmed. Tax costs and settle decree on notice.

---

(67 Misc. Rep. 32.)

### In re HUSSEY et al.

(Surrogate's Court, Kings County. March, 1910.)

WILLS (§ 734*)—PAYMENT OF LEGACIES—INTEREST.

    Legacies payable on the death of a life tenant out of a trust estate begin to draw interest from the termination of the life estate, though the trust estate cannot immediately be converted into cash.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1864; Dec. Dig. § 734.*]

In the matter of the judicial settlement of Levi Hussey and Albert D. Gantz, executors of Albert B. Hussey, deceased. Decree rendered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes